UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TENNESSEE BANK & TRUST**, a wholly owned division of **FARMERS BANK & TRUST COMPANY**, an Arkansas state bank, ) ) ) ) | |
| Plaintiff, ) ) ) ) | **Case No. 3:11-cv-0984** <br> **Judge Trauger** |
| v. ) ) | |
| **MARION EDWIN LOWERY, CYNTHIA LOWERY, MARIAN ELIZABETH LOWERY SAFFLE, JOHN HARRISON LOWERY, WILLIAM HARRISON CRABTREE, JR., JIM ENGLAND, RICHARD INMAN, TOMMY CROCKER, BBC HOLDINGS, INC., BOC OPERATIONS, LLC, PBLF, LLC, COMMERCE BANCSHARES, INC., PEOPLES STATE BANK OF COMMERCE** and **OAKLAND FINANCIAL SERVICES, INC.,** ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the court is the Motion of defendants Richard Inman, Tommy Crocker, and Jim England for sanctions pursuant to Federal Rule of Civil Procedure 11 (Docket No. 193), to which the plaintiff has responded (Docket No. 211), and to which the defendants have filed a reply (Docket No. 219). For the reasons discussed herein, the defendants' motion will be denied.

## BACKGROUND

At the heart of the various claims asserted in this litigation by the plaintiff, Tennessee

1

Bank & Trust ("TBT"),[1] is certain real property located in Williamson County, Tennessee.[2] On December 31, 2009, defendant BBC Holdings, Inc. ("BBC"), an entity that engages in lending activities in addition to specializing in the purchase and pooling of distressed assets, loaned defendant PBLF, LLC ("PBLF"), a shell company formed to acquire commercial and residential real estate, $7.8 million pursuant to the terms of a Promissory Note signed by both parties. Defendant Marion Edwin Lowery ("Ed Lowery") is alleged to have personally guaranteed PBLF's payment of the Note. For its part, PBLF granted BBC various mortgages on real properties it owned, including the property at the center of this litigation ("the Real Property"). This property contains an office building and had been previously conveyed to PBLF by Lowery. It is alleged that the Real Property represents a substantial portion of the security for the Note.

On the same date that it loaned funds to PBLF, BBC also entered into a Participation Agreement with TBT. Pursuant to that agreement, TBT purchased a 54% participation interest in BBC's loan to PBLF. Under the agreement's terms, BBC was required, among other things, to consult TBT and obtain its written consent before agreeing to release any of the collateral offered as security for its loan to PBLF.

Soon after the Promissory Note and Participation Agreement were signed, Lowery, the personal guarantor of the Note, saw his financial condition deteriorate. It is alleged that Lowery's financial position was negatively impacted by the financial difficulties experienced by defendant Oakland Financial Services, Inc., an entity that he controlled. Sometime during the

---

[1] The plaintiff is alleged to be a wholly-owned division of Farmers Bank & Trust Company, an Arkansas bank.

[2] Unless otherwise noted, the allegations are drawn from the plaintiff's Second Amended Complaint (Docket No. 164), and the exhibits attached thereto.

early portion of 2010, BBC approached TBT and sought permission to release the Real Property as collateral for the PBLF loan, so that it could be transferred to another entity. TBT denied BBC's request.

Despite its failure to obtain TBT's written consent, BBC released the Real Property from the mortgage on May 28, 2010. PBLF then conveyed the Real Property to defendant BOC Operations, LLC. The Second Amended Complaint alleges that BBC, PBLF, and BOC were all instrumentalities of defendant Lowery. It further alleges that defendants Inman, Crocker, and England (collectively, "the director defendants") were, along with Lowery, directors of BBC and caused it to secretly release the Real Property, despite their knowledge of the Participation Agreement's requirements.

TBT filed this lawsuit on October 17, 2011. (Docket No. 1.) On December 5, 2012, it sought leave to file a Second Amended Complaint and submitted as an exhibit its proposed pleading signed by plaintiff's counsel. (Docket No. 148; Docket No. 148-1.) The court granted TBT's Motion to Amend on January 9, 2013 as unopposed, and the Second Amended Complaint was filed on the same date. (Docket Nos. 163-64.) The Second Amended Complaint alleges, among other things, that the release and conveyance of the Real Property were fraudulent and unlawful acts taken in furtherance of a scheme between all of the defendants named in this suit to protect Ed Lowery's assets from the lawful claims of his and his entities' creditors. TBT has asserted claims for civil conspiracy and conversion against the director defendants.

TBT also alleges, in the alternative, a cause of action for conversion, fraud, and civil conspiracy against the director defendants. This cause of action is predicated on a separate allegation made by defendant People's State Bank of Commerce (the sole shareholder of BOC

3

and another alleged instrumentality of Lowery's) that, at the time BBC entered into the Participation Agreement with TBT, BBC had previously arranged to assign the Promissory Note to People's State Bank or had already done so. The Second Amended Complaint thus alleges that the director defendants participated in a civil conspiracy to defraud TBT by causing BBC to sell a purported participation interest in the Promissory Note to TBT, when the Note had already been conveyed to People's State Bank.

Following the commencement of this suit, the director defendants noticed the Rule 30(b)(6) deposition of TBT. (Docket No. 196-1.) The amended notice of deposition attached as an exhibit to the director defendants' motion was served on TBT on December 10, 2012 and listed several topics including those designed to probe TBT's knowledge of facts underlying its claims against Messrs. Inman, Crocker, and England. (*See* Docket No. 196-1.) On December 13, 2012, Steve Bell, TBT's Rule 30(b)(6) corporate representative, was deposed by the director defendants. (Docket No. 193 at 2.) At his deposition, Mr. Bell testified that he lacked awareness of any facts supporting TBT's claims against the director defendants. (Docket No. 196-6 at 145-47, 158-59, 171-72, 175, 179-82.) He also testified that, while he was the employee best suited to answer questions on the topics noticed, the TBT employees who possessed the most knowledge about the events surrounding the Participation Agreement and the subsequent release of the Real Property had since retired. (Docket No. 211-1 at 9, 13-14, 19, 22-25, 42-43.) The director defendants filed the instant motion on February 14, 2013. (Docket No. 193.)

## ANALYSIS

Rule 11 of the Federal Rules of Civil Procedure provides the following:

> Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name . . . By presenting

4

> to the court a pleading . . . whether by signing, filing, submitting, or later advocating it - an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, *will likely have evidentiary support after a reasonable opportunity for further investigation or discovery* . . . If, after notice and a reasonable opportunity to respond, the court determines that [these requirements have] been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated [these requirements] or is responsible for the violation.

Fed. R. Civ. P. 11 (emphasis added). "The central purpose of Rule 11 is to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 390 (1990).

The test in the Sixth Circuit for the imposition of Rule 11 sanctions is "whether the individual attorney's conduct was reasonable under the circumstances." *McGhee v. Sanilac Cnty.*, 934 F.2d 89, 93 (6th Cir. 1991) (internal quotation marks and citations omitted). A court is "expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Merritt v. Int'l Assoc. of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (internal quotation marks and citations omitted). The reasonable inquiry required under Rule 11 is a continuing one. *Id.* Indeed, "the plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and[,] where appropriate[,] modify them to conform to Rule 11." *Id.* (internal quotation marks and citations omitted). A district court's sanctions determination is reviewed for an abuse of discretion. *See Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 739 (6th Cir. 2008) ("We review a

5

district court's decision to grant or deny sanctions . . . arising from . . . Rule 11, under the abuse-of-discretion standard").

The director defendants have moved for sanctions against TBT based on the answers given by its Rule 30(b)(6) corporate representative, Steve Bell, to questions posed during his December 13, 2012 deposition concerning his awareness of facts supporting the causes of action against Messrs. Inman, Crocker, and England in the Second Amended Complaint. (Docket No. 194 at 2-4.) They argue that, because Mr. Bell lacked awareness of any facts supporting TBT's claims against them, the claims lack a factual basis and should be dismissed under Rule 11. (*Id.* at 6, 11.) The director defendants also seek reasonable attorney's fees, costs, and expenses for preparing their Rule 11 letter to opposing counsel, the current motion papers, and the reply brief. (*Id.* at 11.) In responding to the director defendants' motion, TBT contends that the decision to submit a Second Amended Complaint asserting civil conspiracy, conversion, and fraud claims against Messrs. Inman, Crocker, and England was objectively reasonable under the circumstances. (Docket No. 211 at 14-15.) It also contends that the director defendants' motion is premature. (*Id.* at 11-14.)

Having reviewed the parties' submissions, the court is not persuaded that the decision of TBT's counsel to submit the Second Amended Complaint on December 5, 2012 was objectively unreasonable under the circumstances. While the director defendants make much of the fact that Mr. Bell's Rule 30(b)(6) deposition failed to provide any factual support for the Second Amended Complaint's claims asserted against them, it bears emphasizing that Mr. Bell's December 13, 2012 deposition was taken after the plaintiff submitted the Second Amended Complaint, and thus cannot, by itself, control the Rule 11 inquiry. *See Merritt*, 613 F.3d at 626 (stating that a court is "expected to avoid using the wisdom of hindsight and should test the

6

signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.") Mr. Bell's lack of knowledge, by itself, does not demonstrate that the claims asserted in the Second Amended Complaint against the director defendants were baseless when submitted to the court.

The Second Amended Complaint alleges that Messrs. Inman, Crocker, and England each held seats on the Board of Directors for BBC, the entity which allegedly released the Real Property without first securing TBT's written consent pursuant to the requirements of the Participation Agreement. Defendant Ed Lowery, the protection of whose assets lies at the center of the alleged civil conspiracy implicating the director defendants, is also alleged to have been a member of BBC's Board of Directors. Based on these factual allegations, it was not unreasonable for TBT's counsel to believe that the director defendants may have known about, and been involved in, BBC's alleged assignment of the Promissory Note to People's State Bank, its release of the Real Property, and PBLF's subsequent conveyance of that property to BOC.

While it is true, as the director defendants point out, that defendant Harrison Crabtree, BBC's president, testified during his September 26, 2012 deposition that none of these three defendants had any involvement with the release of the Real Property, Mr. Crabtree also testified that BBC's board members were aware of both the loan to PBLF and the Participation Agreement with TBT. (Docket No. 211-2 at 26-27, 95.) Moreover, as TBT points out in its opposition brief, it has not yet had the opportunity to depose the director defendants and two key witnesses who were former BBC officers to test their knowledge concerning the circumstances surrounding the release of the Real Property and its subsequent conveyance to BOC. (Docket No. 211 at 9, 12.) Working amidst this entire backdrop, the court is not persuaded that, as an objective matter, TBT's counsel acted unreasonably by asserting civil conspiracy, conversion,

7

and fraud claims against the director defendants in the Second Amended Complaint submitted on December 5, 2012.

In a similar vein, the court agrees that the director defendants' motion is premature. Again, it is predicated on the assertion that the claims against Messrs. Inman, Crocker, and England in the Second Amended Complaint lack factual support. (Docket No. 194 at 1.) However, the Sixth Circuit has previously noted that, "[w]hether a case is well grounded in fact will often not be evident until a plaintiff has been given a chance to conduct discovery." *Runfola & Assoc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir. 1996); *see also Bailey v. Papa John's USA, Inc.*, 236 F.App'x. 200, 205 (6th Cir. 2007) (same). Given the limited discovery that has been conducted thus far, the court believes that the defendants' motion should also be denied as premature.

Accordingly, for the foregoing reasons, the court will deny the director defendants' motion. TBT should be given an adequate opportunity to develop proof in support of the claims asserted against these defendants. Nevertheless, as it proceeds through discovery, TBT's counsel is reminded of its continuing obligation to comply with Rule 11. In light of the rule's central purpose to deter baseless filings, *see Cooter & Gell*, 496 U.S. at 390, counsel must continue to "review and reevaluate [its] pleadings" to ensure that they remain Rule 11 compliant. *See Merritt*, 613 F.3d at 626. Indeed, should discovery of the director defendants and former BBC officers render the claims in the Second Amended Complaint against Messrs. Inman, Crocker, and England untenable, TBT's counsel's Rule 11 obligations require it to no longer pursue them. *See Runfola & Assoc.*, 88 F.3d at 373-74 (noting that the "gravamen of Rule 11 [is not in] the filing of the claim that eventually proves to be meritless, but rather in the persistence in pursuing that claim after the pleader has or should have become aware that it lacks merit"); Fed. R. Civ. P.

11, Advisory Committee Notes to the 1993 Amendments (noting that litigants may be subject to sanctions "for insisting upon a position after it is no longer tenable" and stating that "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention").

## CONCLUSION

For all of the reasons discussed herein, the Motion of defendants Richard Inman, Tommy Crocker, and Jim England for sanctions pursuant to Federal Rule of Civil Procedure 11 (Docket No. 193) is **DENIED**.

Enter this 9th day of August 2013.

										_____
										ALETA A. TRAUGER
										United States District Judge